# IN THE COURT OF APPEALS OF IOWA

No. 16-0956
Filed September 27, 2017

**TRAVARIS CHANCELLOR,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan, Judge.

Travaris Chancellor appeals from the denial of his application for postconviction relief.  **AFFIRMED.**

Andrea K. Buffington of Ranes Law Firm, West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Kyle P. Hanson, Assistant Attorney General, for appellee State.

Considered by Doyle, P.J., Bower, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**MAHAN, Senior Judge.**

Travaris Chancellor appeals from the denial of his application for postconviction relief. Finding no error, we affirm.

Travaris Chancellor was nineteen years old when he was involved in an evening of violent disputes, which turned into a "melee." During the melee, Chancellor got into a vehicle, drove over a curb and across a park lawn at a high rate of speed, and struck and killed two women who were standing in a group of twelve to fourteen people. He claimed he accidentally hit the women as he was attempting to escape the crowd that was assailing him. Chancellor was charged with two counts of first-degree murder.

At trial, Latonia Johnson testified that she had been in the car with Chancellor, she told Chancellor to stop, and she told him her aunt was in the group of women he was headed toward. She testified that, at some point while driving, Chancellor stated, "Those mother fuckers, they jumped me. They got to pay."[1] Jay Garroutte, who had been in jail with Chancellor after the incident, testified Chancellor told Garroutte about the circumstances of his charges and that Chancellor's "intention was he was going to go home and get his pistol or go get a pistol and come back and start shooting people." However,

> he put the car in reverse and started to back up to turn around and leave, and he saw [one of the women with whom he had fought earlier] and one of her daughters and several other people standing up on the sidewalk or up on the side of the street as he was starting to leave, and he decided—he said, "I just decided fuck it, so I just smashed it and tried to smash them."

---

[1] The women hit by the vehicle were *not* the women with whom Chancellor was having problems that day.

Chancellor testified he did not remember driving over the curb, hitting a tree, hitting the women, or hitting a fence. When he learned of the women's deaths, he was distraught and turned himself into police. The jury convicted Chancellor of two counts of second-degree murder.

On direct appeal, Chancellor's challenge to the jury instructions was rejected and his convictions were upheld. *See State v. Chancellor*, No. 10-0930, 2011 WL 3481006, at *2 (Iowa Ct. App. Aug. 10, 2011).

Chancellor then filed an application for postconviction relief (PCR), alleging his trial attorneys were ineffective in failing to adequately impeach Johnson and Garroutte,[2] in failing to object to certain evidence,[3] and in failing to employ a medical and or psychological expert to evaluate Chancellor and testify as to Chancellor's mental and/or physical capacity at the time of the incidents and to explore possible defenses. His two trial attorneys testified the theory of the defense was that the killings had been accidental—that Chancellor was fleeing a dangerous scene (during which hammers were used to strike people, bricks were thrown, the windshield of the vehicle Chancellor was driving was smashed, tire irons were used) with Johnson's three children in the car, and he

---

[2] He asserts his attorneys should have used a theft charge to discredit Johnson, and the fact that Garroutte had been disbarred in Nebraska to discredit Garroutte. We note both witnesses were incarcerated at the time of their testimony and wearing jail attire—Johnson was jailed as a material witness in another murder investigation, and Garroutte was facing lengthy sentences on drug charges and there were several mentions of Garroute being a former attorney during the trial.

[3] Specifically, Chancellor asserts a brick and a tire iron were admitted into evidence with no proof they were actually used during the melee.

did not know he had hit anyone. Neither attorney believed Chancellor's lack of memory of the incident supported a need to have him evaluated psychologically.[4]

Chancellor testified at the PCR trial. He recalled:

And as I was driving forward, Rodney had threw some—threw a rock or whatever through the passenger side and flew out the driver's side, and I got distracted. And the only thing I remember is me hitting the curb and feeling the bump, and I don't remember whatever happened after that.

He stated he learned of the women's deaths after dropping off Johnson's children with another relative, and he then drove to the police and turned himself in. He testified he did not make the incriminating statements Johnson and Garroutte testified he made, and he testified he never told Garroutte anything about the case. Chancellor wanted his trial counsel to move to suppress any testimony by Garroutte, claiming he was placed in Chancellor's cell to get information.

---

[4] One of his trial attorneys, Amy Kepes, was asked, "Had an expert been available at trial to testify on the issue of head trauma and its impact on Mr. Chancellor's intent or voluntary acts with regard to this incident, do you think that would have been helpful?" She responded, "No. . . . Because I believe that his behavior and the course of conduct and the situation as it was described explains what happened. There was enough intent as to certain parts."

Steve Addington was asked if he was aware that Chancellor had been hit by a car when he was a child and that he suffered migraines; he was not aware. When asked if a "psychologist or neurologist could have given any sort of expert opinion as to the effect of things like migraines or Mr. Chancellor's memory loss could have had on his actions that day," Attorney Addington stated, "I don't believe memory loss would have impacted actions at the time. I think, you know, the idea of a crowd of people out to get him was enough motivation to speed away from the place, and I think that was brought out."

On cross-examination, Chancellor testified about the day of the offenses in quite some detail. Then:

Q. And if I understand you correctly, as you sit here today, the only thing you don't remember about what happened is when you ran those ladies over; right? A. Yeah.

Q. And when you were in trial, the only thing you didn't remember was when you ran those ladies over; right? A. Yeah.

The PCR court addressed each of his claims, concluded Chancellor had failed to prove the necessary failure of duty and prejudice, and dismissed the action. *See Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001) (stating applicant must prove both elements of a claim of ineffective assistance of counsel).

The court first determined:

> [T]his court rejects Chancellor's ineffective assistance of counsel claim that his trial attorneys failed to investigate and impeach witnesses, Latonia [Johnson] and Garroutte. Chancellor's counsel could have chosen a different method for impeaching the witnesses or highlighted other weakness or biases of the witnesses. However, Chancellor's trial attorneys' methods of discrediting Latonia and Garroutte were reasonable under the circumstances and do not give rise to a claim for ineffective assistance of counsel.

As for the claim that trial counsel failed to have Chancellor evaluated, the court determined "there was nothing warranting such an examination and such a defense was unlikely to be fruitful or relevant."

The court found further, "Chancellor's trial counsel was not ineffective for not conducting further investigation or requesting suppression of Garroutte's testimony. His counsel investigated and questioned Garroutte on his background and motives for testifying both prior to and at trial. Their method of impeaching and discrediting Garroutte's testimony was a reasonable tactical decision."

The PCR court also addressed the admission of the brick and the tire iron:

> [E]ven if they were not the brick that was thrown through the window of Latonia's vehicle was not damaging to Chancellor's case. The defense wanted the jury to know that a brick came through. It demonstrated the chaotic nature of the events and demonstrated that Chancellor was acting to protect himself by "getting the hell out of there." In the chaos of the circumstances unfortunately he hit the two women.

The tire iron is equally irrelevant. The tire iron was not the object that killed either women. It showed the desperation that Latonia faced. She grabbed a crowbar to protect herself, her sister, Rovin, Chancellor and her children. The testimony is clear on that issue. Whether the correct items were entered into evidence is immaterial.

The court rejected Chancellor's more general claim that trial counsel did not adequately prepare for or conduct the trial, and his claim that the submission of the brick and the tire jack constituted prosecutorial misconduct.

On our de novo review, *see id.* at 141, we find no reason to reiterate the law applicable to ineffective assistance of counsel claims or more of the district court's thorough ruling. We affirm without further opinion. *See* Iowa Ct. R. 21.26(1) (a), (d), (e).

**AFFIRMED.**